# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANINE A RUDZINSKI,<br><br>                    Plaintiff,<br><br>     -against-<br><br><br>JONATHAN L. GLASHOW, MD, PC,<br>LAEL CARTER and JONATHAN L.<br>GLASHOW<br><br>                    Defendants. | CIVIL ACTION NO. _____<br><br><br>**DEFENDANT JONATHAN L. GLASHOW,<br>MD, PC, LAEL CARTER AND JONATHAN<br>L. GLASHOW<br>NOTICE OF REMOVAL** |

Pursuant to 28 U.S.C. § § 1331, 1367, 1441, and 1446, Defendant J.L. Glashow, M.D., P.C. (improperly pled as "Jonathan L. Glashow, MD, PC") (the "Company"), and Jonathan L. Glashow (collectively "The Glashow Defendants"), with the consent of Individual Defendant, Lael Carter, remove to this Court the state court action described below:

1.     Plaintiff Janine A. Rudzinski ("Plaintiff") filed an action in the New York Supreme Court, Kings County, (the "State Court Action"), on February 17, 2016.

2.     Defendant was served with the Summons and Complaint in the State Court Action on February 19, 2016.

3.     The Supreme Court of New York, County of Kings is located within the Eastern District of New York.  Thus, venue is proper in this Court because it is the "district and division embracing the place where such [state court] action is pending."  28 U.S.C. § 1441(a).

4.     Glashow Defendants are filing this Notice of Removal with the consent of Individual Defendant, Lael Carter, within thirty (30) days after service of the Summons and

Petition upon it.  Thus, under 28 U.S.C. § 1446(b), Glashow Defendants' time to remove and to answer has not yet expired.

5.      In accordance with 28 U.S.C. §1446(a) a copy of all pleadings and papers that have been filed and served on The Glashow Defendants in the State Court Action are attached to this Notice as Exhibit A.  Plaintiff has not served upon Glashow Defendants any other process, pleadings or orders.

6.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff, upon Individual Defendant Lael Carter, and a copy is being filed in the Supreme Court of New York by the Glashow Defendants.

## This Court Has Removal Jurisdiction
## As the Complaint Asserts Claims Under Federal Law

7.      The State Court Action may be removed to this Court pursuant to 28 U.S.C. § 1441 because this Court has original federal question jurisdiction under 28 U.S.C. § 1331 based on allegations/claims arising under the laws of the United States of America.

8.      "Federal question jurisdiction exists when plaintiff's well-pleaded complaint establishes that federal law creates the cause of action," or when "some substantial, disputed question of federal law is a necessary element of ... [a] well-pleaded state claim[]." *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 276 & n.4 (3d Cir. 2007) (internal quotation marks & citations omitted;). *Accord, e.g., U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002).

9.      Plaintiff's Complaint alleges in paragraph 105 "that all times herein are relevant, the Defendants failed to compensate Plaintiff Rudzinski properly", Exhibit A, ¶105.

10.     Plaintiff's Complaint alleges in paragraph 106 "that at all times herein relevant, the Defendants would not compensate Plaintiff for the hours she worked exceeding 40 hours a week" Exhibit A, ¶106.

11.     In addition, in paragraphs 156 of Plaintiff's Complaint, she alleges that she has: "suffered and will come to suffer the loss and/or partial loss of ...benefits...[and requests] all lost wages and **benefits resulting from Defendants['] unlawful employment practices,"** Exhibit A, ¶156 & ¶156D.

12.     Accordingly, this Court has original federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343 in that the case involves allegations/claims under the laws of the United States, including but not limited to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.*; the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et seq.* Thus, the action may be removed to this Court pursuant to 28 U.S.C. § 1441.

13.     Plaintiff also asserts causes of action for discrimination and retaliation under New York laws (*i.e.*, the New York Human Rights Law, N.Y. Exec. Law § 290-301 *et seq.*; the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*) based on the same underlying allegations. (*See generally,* Complaint) This Court has supplemental jurisdiction over Plaintiff's state law claims because they form a part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

14.     Removal of Plaintiff's state law claims is proper because "[w]herever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein. . . ." 28 U.S.C. § 1441(c).

15.     Accordingly, this Court has original federal question jurisdiction and supplemental jurisdiction under 28 U.S.C. §§ 1331, 1334, and 1367(a).

WHEREFORE, The Glashow Defendants hereby notify this Court, Plaintiff, Individual Defendant Lael Carter and the Supreme Court for New York, County of Kings, that the above-captioned matter, now pending against The Glashow Defendants in the Supreme Court for New York, County of Kings, has been removed to this Court.

Respectfully submitted,

**FISHER & PHILLIPS LLP**
Attorneys for The Glashow Defendants

By:_____
Gregg H. Salka, Esq.
FISHER & PHILLIPS LLP
430 Mountain Avenue
Murray Hill, New Jersey 07974
(908) 516-1050 (phone)
(908) 516-1051 (fax)
gsalka@laborlawyers.com

Dated:  March 17, 2015

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS                                                    Index No.:
------------------------------------------------------------X
JANINE A. RUDZINSKI,

                Plaintiff,

     -against-                                        **VERIFIED COMPLAINT**

JONATHAN L. GLASHOW, MD, PC,
LAEL CARTER and
JONATHAN L. GLASHOW,

              Defendants.
------------------------------------------------------------X

      Plaintiff JANINE A. RUDZINSKI, by her attorneys, AKIN LAW GROUP PLLC, upon information and belief, complains of the Defendants as follows:

1.    Plaintiff JANINE A. RUDZINSKI complains pursuant to the laws of the State of New York and the Administrative Code of the City of New York, seeking damages to redress the injuries Plaintiff has suffered as a result of being sexually harassed, discriminated against, and retaliated against by her former employer on the basis of her **gender / sex, sexual orientation**. Upon complaining about the sexual harassment, the hostile work environment and the discrimination, the Plaintiff was subjected to retaliation with further discrimination and hostilities resulting in her termination.

2.    That at all times hereinafter mentioned, Plaintiff JANINE A. RUDZINSKI, (hereinafter "RUDZINSKI") was and is a resident of New York.

3.    That at all times hereinafter mentioned, Defendant JONATHAN L. GLASHOW, MD, PC (hereinafter "GLASHOW PC") was and is a domestic business entity duly organized and existing under and by virtue of the laws of the State of New York.

4.    That at all times hereinafter mentioned, Defendant GLASHOW PC was and is a domestic business entity duly authorized to conduct business in the State of New York.

5.    That at all times hereinafter mentioned, Defendant GLASHOW PC operates a private orthopedic surgery and sports medicine practice.

6.    That at all times hereinafter mentioned, Defendant GLASHOW PC was and is a for-profit entity conducting business in the state of New York.

7.    That at all times hereinafter mentioned, Defendant GLASHOW PC is an entity, located at premises designated and / or more commonly known as 737 Park Avenue, Suite 1C New York, NY 10021.

8.    That at all times herein mentioned, Defendant JONATHAN L. GLASHOW (hereinafter referred to as "GLASHOW") was and is a resident of the state of New York.

9.    That at all times hereinafter mentioned, Defendant GLASHOW was and is the Chief Executive Officer of Defendant GLASHOW PC.

10.   That at all times herein mentioned, Defendant GLASHOW was and is the owner of Defendant GLASHOW PC.

11.   That at all times herein mentioned, Defendant GLASHOW owns an equity in Defendant GLASHOW PC.

12.   That at all times hereinafter mentioned, Defendant GLASHOW was and is an agent, servant and/or employee of Defendant GLASHOW PC.

13.   That at all times hereinafter mentioned, Defendant GLASHOW was and is self employed at Defendant GLASHOW PC.

14.   That at all times hereinafter mentioned, Defendant GLASHOW was and is employed by Defendant GLASHOW PC as a doctor.

15.    That at all times hereinafter mentioned, Defendant GLASHOW worked for Defendant GLASHOW PC at the premises designated and / or more commonly known as 737 Park Avenue, Suite 1C New York, NY 10021.

16.    That at all times hereinafter mentioned, Defendant LAEL CARTER (hereinafter referred to as "CARTER") was and is a resident of the state of New York.

17.    That at all times herein mentioned, Defendant CARTER was employed at GLASHOW PC.

18.    That at all times herein mentioned, Defendant CARTER was an agent, servant and/or employee of Defendant GLASHOW PC.

19.    That at all times hereinafter mentioned, Defendant CARTER was employed by Defendant GLASHOW PC as an Office Manager / Surgical Coordinator.

20.    That at all times hereinafter mentioned, Defendant CARTER worked for Defendant GLASHOW PC at the premises designated and / or more commonly known as 737 Park Avenue, Suite 1C New York, NY 10021.

21.    On or about May 5, 2015 Plaintiff RUDZINSKI commenced her employment with Defendant GLASHOW PC.

22.    That at all times herein relevant, Plaintiff RUDZISNKI commenced her employment at Defendant GLASHOW through Solomon Page Group, an employment agency.

23.    That at all times herein relevant, the Defendant CARTER interviewed Plaintiff RUDZINSKI for the position at Defendant GLASHOW PC.

24.    That at all times herein relevant, Plaintiff RUDZINSKI commenced her employment at Defendant GLASHOW PC on a temporary probationary period, which was to last for approximately three (3) months.

25.   That at all times herein mentioned, Plaintiff RUDZINSKI was employed with Defendant GLASHOW PC.

26.   That at all times herein relevant, following the interview, the Defendant CARTER advised Plaintiff RUDZINSKI that she could start the job immediately.

27.   That at all times herein relevant, Plaintiff RUDZINSKI satisfactory performed her duties during her employment with Defendant GLASHOW PC.

28.   That at all times herein mentioned, Plaintiff RUDZINSKI was employed with Defendant GLASHOW PC as an Executive Assistant to Defendant CARTER.

29.   That at all times herein mentioned, Plaintiff RUDZINSKI was earning $15.00 per hour during her employment with the Defendant GLASHOW PC.

30.   That at all times herein relevant, Plaintiff RUDZINKSI was paid through Solomon Page Group during her probationary period at Defendant GLASHOW PC.

31.   That at all times herein relevant, Plaintiff's duties included, but not limited to: contacting insurance companies for billing purposes, setting up surgeries, maintaining correspondence with hospitals, greeting patients, organizing exam rooms, ordering office supplies, paying bills, conducting banking, etc.

32.   That at all times herein relevant, during her employment with Defendant GLASHOW PC Plaintiff RUDZINSKI reported directly to Defendant CARTER.

33.   That at all times herein relevant, Plaintiff RUDZINSKI was not allowed to contact Defendant GLASHOW, other than through Defendant CARTER.

34.   That at all times herein relevant, Plaintiff RUDZINSKI was in subordinate relationship in regards to Defendant CARTER during their employment with the Defendant GLASHOW PC.

35. That at all times herein relevant, Defendant CARTER had the right to hire / fire, promote / demote, award / sanction Plaintiff RUDZINSKI during her employment with the Defendant GLASHOW PC.

36. That at all times herein relevant, Defendant CARTER was Plaintiff's supervisor during her employment with Defendant GLASHOW PC.

37. That at all times herein relevant, Defendant CARTER was Plaintiff's manager during her employment with Defendant GLASHOW PC.

38. That at all times herein relevant, Defendant CARTER was in a superior position to Plaintiff RUDZINSKI during their employment with the Defendant GLASHOW PC.

39. That at all times herein relevant, during Plaintiff's employment with the Defendant GLASHOW PC Plaintiff became the target of discrimination against because of her sex / gender and / or sexual orientation.

40. That at all times herein relevant, Plaintiff is a heterosexual woman.

41. That at all times herein relevant, upon information and belief, Defendant CARTER is a bi-sexual woman.

42. That at all times herein relevant, the Defendants would discriminate against Plaintiff RUDZINSKI by subjecting her to sexual harassment at Defendant GLASHOW PC.

43. That at all times herein relevant, during Plaintiff's employment with the Defendant GLASHOW PC, she was subjected to numerous incidents of sexual harassment, including, but not limited the following:

   a) That at all times herein relevant, from the commencement of Plaintiff's employment with the Defendant GLASHOW PC, Defendant CARTER implied her personal interest in Plaintiff RUDZINSKI.
   b) That at all times herein relevant, Defendant CARTER would inquire from Plaintiff about her personal life, sexual history and current/past relationships.

c) That at all times herein relevant, Defendant CARTER would buy meals/drinks for Plaintiff, pay for her metro card, give her expensive gifts (like phone, etc.) on a regular basis.

d) That at all times herein relevant, Defendant CARTER would make inappropriate comments to Plaintiff.

e) By way of example, Defendant CARTER would inquire from Plaintiff whether she was "into women". When Plaintiff replied negatively, Defendant CARTER said, "Maybe it wasn't with the right woman" [implying herself as the "right woman"].

f) That at all times herein relevant, Defendant CARTER would dress very provocatively, revealing intimate parts of her body at workplace.

g) That at all times herein relevant, Defendant CARTER would discuss her "boob job" with Plaintiff on a regular basis.

h) That at all times herein relevant, Defendant CARTER would reveal to Plaintiff her personal sexual relationship with her husband and / or other persons.

i) By just a few examples: Defendant CARTER would tell Plaintiff that she has an open marriage; that she and her husband often sleep with other persons; that she likes to watch her husband having sex with other women, and that it was common for them to visit sex parties.

j) That at all times herein relevant, on the first day of Plaintiff's employment with the Defendant GLASHOW PC Defendant CARTER would discuss the issues in her personal life with Plaintiff.

k) That at all times herein relevant, Defendant CARTER would share her personal life with Plaintiff in the attempt to deserve Plaintiff's trust, and enable further sexual harassment of Plaintiff.

l) That at all times herein relevant, on the second day of Plaintiff RUDZINSKI's employment with the Defendant GLASHOW PC, Defendant CARTER would show Plaintiff the print out of Defendant CARTER's profile on kinkscollarsbdsm.com.

m) That at all times herein relevant, Defendant CARTER would advise Plaintiff that she was into BDSM [Bondage Dominance Submission Masochism], and inquire from Plaintiff whether she knew what BDSM was.

n) That at all times herein relevant, Defendant CARTER would request from Plaintiff RUDZINSKI to fill out the checklist about her bdsm preferences.

o) That at all times herein relevant, Plaintiff RUDZINSKI advised Defendant CARTER that it was all new to her, and that she would like to discuss the same with her boyfriend.

p) That at all times herein relevant, Defendant CARTER would continually share with Plaintiff the explicit and intimate details of her sexual interactions with her husband.

q) By way of example, Defendant CARTER would tell Plaintiff RUDZINSKI how she and her husband would have a threesome with other women, and how her husband would train other persons in BDSM.

44. That at all times herein relevant, the Defendants maintained a pattern of sexual harassment against its employees.

45. Upon information and belief, Elizabeth Prechat [former employee of Defendant GLASHOW PC] was sexually harassed and discriminated against by the Defendants.

46. That at all times herein relevant, Ms. Prechat advised Plaintiff over the text message that "[She] was harassed every day for one year", "The sexual harassment happen[ed] every day along with racism between Vincent and Lael", "it [sexual harassment] definitely happened".

47. That at all times herein relevant, Defendant CARTER would approach and sexually harass Plaintiff on a daily basis.

48. That at all times herein relevant, Plaintiff RUDZINSKI was blindsided by the Defendant CARTER's true intentions; she had no choice but to entertain her direct supervisor's inappropriate behavior in order to keep her job.

49. That at all times herein relevant, the decision to transition Plaintiff from a temporary to a permanent position largely depended on Defendant CARTER's recommendation.

50. That at all times herein relevant, the Defendant CARTER used her authority at Defendant GLASHOW PC to manipulate and further sexually harass Plaintiff.

51. That at all times herein relevant, the Defendant CARTER would brainwash Plaintiff on a daily basis about how her personal relationship would negatively influence her work perspective.

52. By way of example, Defendant CARTER would tell Plaintiff, "The living situation with your boyfriend isn't helping to keep your job", "You should leave him".

53. That at all times herein relevant, Plaintiff RUDZINSKI was blindsided by Defendant CARTER's true intentions, and was made to believe that keeping her relationship would prevent her from keeping her job, which she needed to pay her bills.

54. That at all times herein relevant, the Defendant CARTER was aware that Defendant GLASHOW's decision to hire Plaintiff on a permanent basis would largely depend on her recommendation. The Defendant CARTER would use this as an advantage to further sexually harass Plaintiff.

55. That at all times herein relevant, Plaintiff's probation period was to end in or around August 2015.

56. That at all times herein relevant, on the eve of Plaintiff's transition to a permanent position at Defendant GLASHOW PC, the Defendant CARTER offered Plaintiff to come and live at her house for one month.

57. That at all times herein relevant, the Defendant CARTER would condition Plaintiff's transition to a permanent position based on Plaintiff's consent to stay at Defendant CARTER's house.

58. That at all times herein relevant, the Defendant CARTER implied clearly, that if Plaintiff RUDZINSKI refused to accept the invitation, she might be losing her job at Defendant GLASHOW PC.

59. By just a few examples, Defendant CARTER would tell Plaintiff that moving to her house would "help [Plaintiff] get to work on time", will "help [Plaintiff] keep the job", and that if Plaintiff RUDZINSKI denied the offer, she would get "offended". Defendant CARTER would tell Plaintiff, "I want to make you permanent, but I want to make sure you are responsible and you can come to work on time – but I need you to come to my home and live with me". When Plaintiff would inquire from Defendant CARTER what she needed to do to keep the job, the Defendant CARTER would reply, "I want you to come to my house".

60. That at all times herein relevant, the Defendant CARTER would continually suggest to Plaintiff RUDZINSKI, that her work performance would improve if only she moved to Defendant CARTER's house.

61. By way of example, in or around the end of July 2015 Defendant CARTER would criticize Plaintiff RUDZINSKI regarding a patient's prescription. While yelling at Plaintiff about the prescription, the Defendant CARTER would demand from Plaintiff, "why [Plaintiff] would not come to [her] house."

62. On or about August 2, 2015 Defendant CARTER called Plaintiff RUDZINSKI and threatened her job if she did not come to her house.

63. That at all times herein relevant, the Defendant CARTER would continually manipulate Plaintiff using her superior position in regards to Plaintiff.

64. In or around August 2015 when Plaintiff and Defendant CARTER were leaving work together, Defendant CARTER grabbed Plaintiff's hand, advising, "I am taking you home with me".

65. That at all times herein relevant, the "help" offered by the Defendant CARTER was just an illusion; the Defendant CARTER invited Plaintiff RUDZINSKI to the house only to engage her in BDSM, that Defendant CARTER and her husband practiced.

66. That at all times herein relevant, Plaintiff RUDZINSKI was reluctant to go to Defendant CARTER's house, but felt obligated so in order to keep her job at Defendant GLASHOW PC.

67. That at all times herein relevant, Defendant CARTER used her authority and influence on Plaintiff RUDZINSKI to brainwash her into believing Defendant CARTER meant well for the Plaintiff.

68. On or about August 3, 2015 Plaintiff arrived at the Defendant CARTER's house.

69. That at all times herein relevant, the Defendant CARTER, along with her husband, Lee Carter (hereinafter "Mr. Carter") would continue to brainwash Plaintiff in their attempt to seduce Plaintiff to BDSM.

70. By just a few examples, the Defendant CARTER, along with her husband, would falsely advise Plaintiff that they wanted to "help her" find herself, and become a better person. In his effort to intimidate Plaintiff, Mr. Carter would tell her that he was allegedly a CIA agent, that he "[had] a lot of people under [him]", that "for every action there is a reaction", that he knew that Plaintiff's boyfriend's mother lived in Mexico, that he profiled people, and that "being a slave" is in Plaintiff's nature.

71. That at all times herein relevant, as the result of manipulation by the Defendants, and in fear to lose her job, Plaintiff agreed to be trained mentally by the Defendant CARTER but insisted that she wanted "nothing physical".

72. That at all times herein relevant, at no point during Plaintiff's stay at Defendant CARTER's house did Plaintiff RUDZINSKI consent to physical interaction with the Defendant CARTER, or her husband.

73. That at all times herein relevant, the Defendant CARTER provided Plaintiff RUDZINSKI with a separate room and bathroom in the house.

74. That at all times herein relevant, although Plaintiff was provided with a separate room, the Defendant CARTER would approach Plaintiff, and encourage her to interact with Defendant CARTER and her husband, and not to be "antisocial".

75. That at all times herein relevant, during Plaintiff's stay at the Defendant CARTER's house, Plaintiff was subjected to numerous incidents of sexual harassment, including, but not limited the following:

a) The Defendant CARTER would make inappropriate comments and sexual innuendos in regards to Plaintiff.

b) By way of example, the Defendant CARTER would inquire from Plaintiff if she ever felt a surgically augmented breast.

c) The Defendant CARTER, along with her husband, would inappropriately touch Plaintiff.

d) On or about August 7, 2015 Defendant CARTER would invite Plaintiff RUDZINSKI into her bedroom to watch a comedy. After watching the entire episode, the Defendant CARTER and her husband would have sex in front of Plaintiff.

e) That at all times herein relevant, the Defendant CARTER would inquire from Plaintiff RUDZINSKI if having sex with her husband turned Plaintiff on.

f) That at all times herein relevant, Plaintiff RUDZINSKI replied that it did not turn her on, and that she missed her boyfriend.

g) That at all times herein relevant, the Defendant CARTER and her husband demanded from Plaintiff RUDZINSKI not to mention her boyfriend's name again, otherwise she would be "whipped".

h) On or about August 8, 2015 Defendant CARTER's husband would kiss Plaintiff and grope Plaintiff's breasts without her consent.

i) That at all times herein relevant, the Defendant CARTER and / or her husband would continue to inquire from Plaintiff RUDZINSKI if she was turned on; again, Plaintiff RUDZINSKI replied negatively.

j) That at all times herein relevant, Plaintiff RUDZINSKI mentioned her boyfriend's name; the Defendant CARTER's husband immediately whipped Plaintiff on the left thigh ["as a punishment"].

k) The Defendant CARTER would then make Plaintiff touch his penis and ask her whether Plaintiff would get on top of him.

l) That at all times herein relevant, Plaintiff refused to engage in sexual intercourse with Defendant CARTER.

m) That at all times herein relevant, Defendant CARTER attempted to perform oral sex on Plaintiff RUDZINSKI.

n) That at all times herein relevant, Defendant CARTER's inappropriate behavior made Plaintiff RUDZINSKI feel extremely uncomfortable.

o) That at all times herein relevant, Defendant CARTER would continually tell Plaintiff, "what happens in the house, stays in the house".

p) That at all times herein relevant, Plaintiff RUDZINSKI was unable to tolerate sexual intercourse initiated by Defendant CARTER any longer.

q) That at all times herein relevant, Plaintiff RUDZINSKI advised the Defendant CARTER that it was "disgusting", and that she believed Defendant CARTER had "STDs."

r) That at all times herein relevant, Plaintiff RUDZINSKI would continually remind the Defendant CARTER that she did not want anything "physical".

s) That at all times herein relevant, Plaintiff RUDZINSKI protested against unwelcome sexual intercourse by leaving the room.

76. That at all times herein relevant, the sexual harassment Plaintiff was subjected to was perpetuated in the office and outside of the office by Defendant CARTER.

77. That at all times herein relevant, the Defendants created a hostile work environment for Plaintiff RUDZINSKI at Defendant GLASHOW PC.

78. That at all times herein relevant, the Defendant CARTER continued to use her authority at Defendant GLASHOW PC to facilitate her sexual harassment of Plaintiff RUDZINSKI.

79. By just a few examples:

   a) Mr. Carter would send Plaintiff a text message, "…At work Lael is the boss you will follow what ever she says. She speaks for Me there."

   b) Mr. Carter would tell Plaintiff, "You took that job [at Defendant GLASHOW PC] for that purpose your getting stronger by being here for that purpose".

80. That at all times herein relevant, the Defendant CARTER would have an access to Plaintiff RUDZINSKI's phone, given to her by Defendant CARTER.

81. That at all times herein relevant, as the result sexual harassment by the Defendants Plaintiff suffered and continues to severe emotional distress.

82. That at all times herein relevant, Plaintiff RUDZINSKI advised the Defendant CARTER that she felt "taken advantage of" by the Defendants.

83. That at all times herein relevant, Plaintiff would see nightmares about Defendant CARTER's sexual harassment.

84. That at all times herein relevant, Plaintiff RUDZINSKI was no longer able to work with Defendant CARTER at Defendant GLASHOW PC.

85.    That at all times herein relevant, Plaintiff RUDZINSKI advised Defendant CARTER that her inappropriate behavior made Plaintiff feel extremely uncomfortable.

86.    That at all times herein relevant, the Defendant CARTER brushed-off Plaintiff's complaints, encouraging Plaintiff to "try to forget about it" and "pretend like it never happened".

87.    That at all times herein relevant, the Defendant CARTER's unlawful conduct became retaliatory against Plaintiff.

88.    That at all times herein relevant, in response to Plaintiff's protest, the Defendant CARTER would tell Plaintiff that she was "dropping the ball" [making mistakes] and was sending "red flags".

89.    That at all times herein relevant, in retaliation against Plaintiff, the Defendant CARTER would reprimand Plaintiff RUDZINSKI for lateness and poor attendance, which she never did before Plaintiff's complaints and objections.

90.    That at all times herein relevant, the Defendant CARTER would threaten Plaintiff RUDZINSKI with the job on a regular basis. By way of example, the Defendant CARTER would tell Plaintiff, "I am worried about your job".

91.    That at all times herein relevant, Plaintiff RUDZINSKI was unable to tolerate hostile work environment at Defendant GLASHOW PC any further, and voiced her concerns to her coworker Ms. Juhi (Last Name Currently Unknown).

92.    That at all times herein relevant, Plaintiff RUDZINSKI was afraid to voice her concerns to Defendant GLASHOW, as she was not allowed to address any issues to Defendant GLASHOW, other than through the Defendant CARTER.

93.    That at all times herein relevant, Ms. Juhi conducted mediation between Plaintiff RUDZINSKI and Defendant CARTER.

94. That at all times here relevant, during the mediation, Plaintiff RUDZINSKI advised Defendant CARTER that she had never consented to physical interaction with the Defendant CARTER or her husband.

95. That at all times herein relevant, during the mediation the Defendant CARTER recalled some of the scenes of sexual interaction with Plaintiff.

96. That at all times herein relevant, Plaintiff RUDZINSKI was unable to stay through the mediation, as it reminded her of the sexual harassment she was subjected to by the Defendants.

97. That at all times herein relevant, Plaintiff RUDZINSKI was unable to tolerate humiliation any further and voiced her concerns to Defendant GLASHOW.

98. That at all times herein relevant, the Defendant GLASHOW involved his attorneys to investigate the issue.

99. That at all times herein relevant, the Defendants, though their attorneys, falsely accused Plaintiff of refusing to cooperate in the investigation of Plaintiff's complaints.

100. That at all times herein relevant, Plaintiff RUDZINSKI was unable to proceed with investigation because of the severe emotional distress she suffered as the result of Defendants' unlawful conduct.

101. That at all times herein relevant, in fear to lose her job Plaintiff RUDZINSKI sent an email to Defendant GLASHOW seeking "reassurance that [her] job will not be in jeopardy until this [investigation] is resolved".

102. That at all times herein relevant, Plaintiff RUDZINSKI requested an extension from the Defendants to appear for the investigation conducted by the Defendants into Plaintiff's complaints.

103.   That at all times herein relevant, the Defendants denied Plaintiff the extension, and terminated Plaintiff from Defendant GLASHOW PC instead.

104.   That at all times herein relevant, Defendant GLASHOW notified Plaintiff via the email that, "[he] must still meet the needs of the patients in [his] medical practice and therefore must hire new employees to replace Ms. Carter and now, [Plaintiff]".

105.   That at all times herein relevant, the Defendants failed to compensate Plaintiff RUDZINSKI properly.

106.   That at all times herein relevant, the Defendants would not compensate Plaintiff for the hours she worked exceeding 40 hours a week.

107.   That at all times herein relevant, Plaintiff RUDZINSKI would regularly work extra hours on the "patients'" days, like Mondays and Wednesdays.

108.   That at all times herein relevant, the Defendants unlawfully reversed Plaintiff's paycheck, dated September 10, 2015 from $627 to $327.

109.   That at all times herein relevant, although the Defendant GLASHOW authorized payment to Plaintiff for the two extra days, the Defendants reversed the payment, falsely advising Plaintiff it was "overpaid".

110.   That at all times herein relevant, when Plaintiff called the payroll company about her reversed payment, she was told that payment was reversed because she was terminated.

111.   That at all times herein relevant, Defendant GLASHOW's attorneys offered Plaintiff $300 if she agreed to sign a release and waiver of all her rights.

112.   That at all times herein relevant, the Defendants terminated Plaintiff RUDZINSKI as a result of discrimination and retaliation against her for complaining about sexual harassment she was subjected to at Defendant GLASHOW PC.

113. Defendants unlawfully harassed, discriminated against and retaliated against Plaintiff RUDZINSKI.

114. Defendants treated Plaintiff RUDZINSKI differently because of her sex / gender.

115. Plaintiff RUDZINSKI's situation at her job was intolerable as a result of the discrimination by Defendants to which she was subjected, and no reasonable person in Plaintiff RUDZINSKI'S position could be expected to continue working under those conditions.

116. Defendants' unwanted sexual harassment created a hostile working environment, which no reasonable person could be expected to tolerate.

117. At all times herein relevant, Plaintiff would protest and complain to Defendants about this unlawful conduct.

118. Despite said complaints and protests, Defendants continued to unlawfully discriminate against and harass the Plaintiff.

119. At all times herein relevant, Plaintiff was and continued to be regularly exposed to a discriminatory, offensive, and hostile work environment.

120. Defendants' actions and conduct were and are intentional and intended to harm the Plaintiff.

121. After Plaintiff protested to Defendants, Plaintiff became the subject of discriminatory retaliation by the Defendants.

122. The Defendants have caused damage and injury to the Plaintiff by first subjecting her to sexual harassment and a hostile work environment and then again by retaliating against her.

123. Plaintiff has been unlawfully discriminated against, was humiliated, and has been degraded and belittled; and as a result suffers loss of rights, emotional distress, loss of income, earnings and caused to sustain personal injuries.

124. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

125. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

126. As Defendants conduct has been willful, reckless, outrageous, intentional, and/or malicious, Plaintiff also demands punitive damages in an amount, which exceeds the jurisdictional limits of all lower Courts.

## AS A FIRST CAUSE OF ACTION FOR
## DISCRIMINATION UNDER NEW YORK STATE LAW

127. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

128. Executive Law § 296 provides that it shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, **sex**, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to **discharge**

__from employment__ such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

129. Defendants engaged in an unlawful discriminatory practice by taking adverse employment action and otherwise discriminating against the Plaintiff because of her __sex__ and engaging in sexual harassment and a hostile work environment.

130. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## AS A SECOND CAUSE OF ACTION FOR
## RETALIATION UNDER NEW YORK STATE LAW

131. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

132. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

133. Defendants engaged in an unlawful discriminatory practice by retaliating, continuing and escalating the discrimination and hostile work environment to which the Plaintiff was subjected, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

134. Defendant engaged in an unlawful discriminatory practice by retaliating against the Plaintiff for making a complaint regarding Defendants' violation of New York State Executive Law.

135. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

136. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

137. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender**, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to **discharge from employment** such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

138. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by actually taking adverse employment action, creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of her **sex** and engaging in sexual harassment and a hostile work environment.

139. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## AS A FOURTH CAUSE OF ACTION FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

140. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

141. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

142. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(e) by retaliating, continuing and escalating the discrimination and hostile work environment to which the Plaintiff was subjected, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

143. Defendants engaged in an unlawful discriminatory practices by retaliating against the Plaintiff for making a complaint regarding Defendants violation of New York City Administrative Code.

144. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

### AS A FIFTH CAUSE OF ACTION FOR
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

145. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

146. Defendants engaged in extreme and outrageous conduct.

147. Defendants intended to cause, and/or disregard the substantial actions of their agents and employees, causing severe emotional distress to the Plaintiff.

148. That at all times hereinafter mentioned, there exists a causal connection between the Defendants' conduct and the injuries sustained by the Plaintiff.

149. That as a result of said conduct, Plaintiff suffered and continues to suffer from severe mental, emotional, and psychological distress.

150. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## AS A SIXTH CAUSE OF ACTION FOR
## ASSAULT AND BATTERY

151. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

152. That at all times hereinafter mentioned, Defendant CARTER wrongfully and falsely, without any warrant or other legal process and without authority of the law and without any reasonable cause touched and/or caused contacted with the Plaintiff, seized, assaulted, laid hold the Plaintiff without consent or provocation by the Plaintiff.

153. That the Defendants assaulted and battered the Plaintiff.

154. That the Defendants caused physical, psychological and mental injury to the Plaintiff.

155. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts.

## INJURY AND DAMAGES

156. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss and/or partial loss of a career and the loss and/or partial loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses,

emotional pain, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by the State Common Law and New York State Executive Law §296 et. Seq.;

B. Declaring that the Defendants engaged in unlawful employment practices prohibited by The New York City Administrative Code Title 8, §8-107 et. Seq.;

C. Declaring that the Defendants harassed, discriminated against, retaliated against, assaulted and battered, and discharged/altered the terms and conditions of her employment on the basis of her sex / gender, sexual orientation;

D. Awarding damages to the Plaintiff, retroactive to the date of her termination, for all lost wages and benefits resulting from Defendants unlawful employment practices;

E. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount that exceeds the jurisdictional limit of all lower courts;

F. Awarding Plaintiff punitive damages;

G. Awarding Plaintiff attorney's fees, costs and expenses; and

H. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
February 15, 2016

Respectfully Submitted,

AKIN LAW GROUP PLLC
Attorneys for Plaintiff

*/s/ Gulsah Senol*

By: Gulsah Senol, Esq.
45 Broadway, Suite 1420
New York, New York 10006
(212) 825-1400

## INDIVIDUAL VERIFICATION

STATE OF NEW YORK    }
                     } ss.
COUNTY OF NEW YORK   }

I, JANINE ANA RUDZINSKI, being sworn, deposes and says;

I am the plaintiff in the within action and am over the age of eighteen years; I have read the foregoing:   _Summons & Complaint_  , and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

The grounds of my belief as to matters not stated upon my own knowledge are as follows; investigation and conversation with my attorneys.

JANINE ANA RUDZINSKI

Sworn to before me on this
___ day of _February_ , 20 16

Notary Public/State of New York

ESTHER OLIVERAS
Notary Public, State of New York
No. 01OL6228411
Qualified in Bronx County
Commission Expires September 20, 20__

SUPREME COURT OF THE STATE OF NEW YORK          Index No:
KINGS COUNTY
-------------------------------------------------------------X
JANINE A. RUDZINSKI,

                    Plaintiff,

          -against-


JONATHAN L. GLASHOW, MD, PC,
LAEL CARTER and
JONATHAN L. GLASHOW,

                    Defendants.
-------------------------------------------------------------X



---------------------------------------------------------------------------------

### SUMMONS and VERIFIED COMPLAINT

---------------------------------------------------------------------------------




**AKIN LAW GROUP PLLC**
*Attorneys for Plaintiff*
45 Broadway, Suite 1420
New York, NY 10006
Tel: (212) 825-1400
Fax: (212) 825-1440

FILED: KINGS COUNTY CLERK 02/17/2016 03:23 PM

NYSCEF DOC. NO. 1

INDEX NO. 502170/2016

RECEIVED NYSCEF: 02/17/2016

SUPREME COURT OF THE STATE OF NEW YORK
KINGS COUNTY
------------------------------------------------------------X
JANINE A. RUDZINSKI,

                      Plaintiff,

       -against-

JONATHAN L. GLASHOW, MD, PC,
LAEL CARTER and
JONATHAN L. GLASHOW,

                   Defendants.

------------------------------------------------------------X

Index No:
Date purchased:

Plaintiff designates:
KINGS County as the
place of trial.

The basis of the venue is
Plaintiff's residence

**SUMMONS**
Plaintiff resides in
KINGS COUNTY

To the above named Defendants:

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
       February 15, 2016

                          Respectfully Submitted,

                          AKIN LAW GROUP PLLC
                          Attorneys for Plaintiff

                          */s/ Gulsah Senol*

                          _____
                          By: Gulsah Senol, Esq.
                          45 Broadway, Suite 1420
                          New York, New York 10006
                          (212) 825-1400

**Defendants' Addresses:**

**JONATHAN L. GLASHOW, MD, PC** [via Secretary of State]
159 East 74th Street, New York, NY 10021

**JONATHAN L. GLASHOW [at Place of Employment]**
37 Park Avenue, Suite 1C New York, NY 10021

**LAEL CARTER**
25 Huber Rd, Wappingers Falls, NY 12590-7519